AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California



| United States of America | |
|---|---|
| v. | Case No. 2:24-mj-05734-DUTY |
| ABIOLA FEMI QUADRI, | |
| Defendant | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

As described in the accompanying attachment, defendant violated the following statutes:

| *Code Sections* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1349 and 1028A | Conspiracy to commit wire and bank fraud. |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ *Francisco Solorio Perez*
*Complainant's signature*

Postal Inspector Francisco Solorio Perez
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 9/19/24

*Judge's signature*

City and state: Los Angeles, California    Joel Richlin, U.S. Magistrate Judge
*Printed name and title*

AUSA Andrew Brown, 11th Floor, x0102

**Complaint Attachment**

<u>Count One, 18 U.S.C. § 1349</u>

Beginning in or before 2020, and continuing through the present, in Los Angeles County, within the Central District of California, and elsewhere, defendant ABIOLA FEMI QUADRI, and others, conspired to commit wire and bank fraud, in violation of Title 18, United States Code, Sections 1343 and 1344.  The object of the conspiracy was carried out, and to be carried out, in substance, as follows: Defendant and his co-conspirators would steal the personal identifying information of victims, and apply for disability and unemployment benefits in their names through the California Employment Development Department ("EDD").  Defendant and his co-conspirators would counterfeit disability certifications purportedly issued by real doctors, whose identities were also stolen.  Defendant and his co-conspirators would take the EDD debit cards, issued through Bank of America, which were credited with the fraudulently obtained disability benefits.  Defendant and his co-conspirators would then use the EDD debit cards at ATMs to withdraw in cash the benefits.  As a result of this fraud, defendant and his co-conspirators defrauded federally-insured financial institutions including Bank of America.  Defendant and his co-conspirators used interstate wires to defraud their victims throughout this conspiracy.

<u>Count Two, 18 U.S.C. § 1028A</u>

Beginning in or before 2020, and continuing through the present, in Los Angeles County, within the Central District of California, and elsewhere, defendant ABIOLA FEMI QUADRI knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person during and in relation to a felony violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Wire and Bank Fraud, as charged in Count One, knowing that the means of identification belonged to another actual person.

# AFFIDAVIT

I, Francisco Solorio Perez, being duly sworn, hereby depose and state as follows:

## I. TRAINING AND EXPERIENCE

1.  I am a United States Postal Inspector employed by the United States Postal Inspection Service ("USPIS"), Los Angeles Division, in Los Angeles, California, where I have served since August 2019. I have completed a fourteen-week basic training course in Potomac, Maryland, which included training in the investigation of identity theft via the United States Mail. I am currently assigned to the USPIS Los Angeles Division, Mail Fraud team where my responsibilities include the investigation of crimes against the United States Postal Service ("USPS") and crimes related to the misuse and attack of the mail system, including theft of Unites States Mail, fraud, and related activity in connection with access devices, identity theft, and unauthorized use of other persons' information for financial gain.

2.  I am familiar with the facts and circumstances described herein. This affidavit is based upon my personal involvement in this investigation, my training and experience, and information obtained from various law enforcement personnel and witnesses, including information that has been reported to me either directly or indirectly. This affidavit does not purport to set forth my complete knowledge or understanding of

the facts related to this investigation.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and part only.  All figures, times, and calculations set forth herein are approximate.

II. **SUMMARY AND PURPOSE OF AFFIDAVIT: COMPLAINT**

3.   This affidavit is made in support of a criminal complaint and arrest warrant against ABIOLA FEMI QUADRI ("QUADRI"), for violation of Title 18, United States Code, Sections 1349, and 1028A (Conspiracy to Commit Wire and Bank Fraud, and Aggravated Identity Theft).

III. **PROBABLE CAUSE STATEMENT**

A. Summary of Probable Cause

4.   Based on an investigation by the State of California's Employment Development Department ("EDD"), QUADRI is associated with at least 72 fraudulent Unemployment Insurance ("UI") and 19 fraudulent Disability Insurance ("DI") claims that were submitted to EDD beginning since 2020.  The personal identifying information ("PII"), including social security numbers ("SSNs"), of at least 91 suspected victims was used to file these fraudulent UI and DI claims. Investigators identified actual losses by the State of California of over $800,000 as to the fraudulent UI claims and over $200,000 as to the DI claims.

5.   EDD associated the claims by commonalities in their online applications, such as the purportedly certifying

physician or practitioner for the DI claims was often similar. Surveillance video depicts QUADRI physically withdrawing funds from at least 38 of the accounts at issue that are not in his name.

B. Background on California Unemployment Insurance

6.  Since, 1935, the United States Department of Labor's UI program has provided unemployment benefits to eligible workers who become unemployed through no fault of their own. This program ensures that at least a significant portion of the necessities of life -- most notably food, shelter, and clothing -- are met on a weekly basis while the worker seeks employment. UI beneficiaries who meet requirements set by their state are eligible for this temporary financial assistance.  Each state administers a separate UI program within the guidelines established by federal law.  In the State of California, EDD administers the UI program for residents and others physically performing work activities in California.

7.  Generally speaking, regular UI claimants must be: 1) unemployed through no fault of their own; 2) able to, and available for, work; 3) willing to accept suitable work; and 4) actively seeking work.

8.  On March 13, 2020, the President of the United States declared the COVID-19 pandemic an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, Congress passed the Coronavirus Aid, Relief, and

Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020. The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

9. Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person had to have been employed and working in California and received at least a certain amount of wages from an employer in the 18 months preceding his or her UI benefits claim. Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

10. The CARES Act established a new program -- Pandemic Unemployment Assistance ("PUA") -- to provide unemployment benefits during the COVID-19 pandemic to people who did not previously qualify for regular unemployment insurance benefits including business owners, self-employed workers, independent contractors, and those with a limited work history who were out of business or had significantly reduced their services as a direct result of the pandemic. UI benefits provided under the PUA program are sometimes referred to as PUA benefits.

11. Under the PUA provisions of the CARES Act, a person who is a business owner, self-employed worker, independent contractor, or gig worker can qualify for PUA benefits administered by EDD if he or she previously performed such work in California and is unemployed, partially unemployed, unable to

work, or unavailable to work due to a COVID-19-related reason.

C. <u>Background on California Disability Insurance</u>

12.  DI is a component of the State Disability Insurance ("SDI") program established in 1946.  DI provides partial wage replacement benefits to eligible California workers who are unable to work due to a non-work-related illness, injury, or pregnancy.  DI benefits may also be paid for work-related illness or injuries under certain circumstances prescribed by law.

13.  A DI claim can be filed over the internet using EDD's SDI Online portal, by submitting a paper claim form, "Claim for Disability Insurance Benefits" (form DE2501) via mail, or by applying in person at a DI office.  The claimant must complete part A, "Claimants Statement" of the form DE2501, and have a physician/practitioner complete part B, "Physician/Practitioner Certificate," certifying their disability and stating an expected release date to return to regular or customary work.

D. <u>EDD and UI Benefits Are Paid by Debit Card</u>

14.  In most cases, EDD UI and DI benefits are paid by means of Electronic Benefit Payments to an EDD debit card.  A debit card is automatically mailed to claimants who are determined eligible for EDD UI and/or DI benefits.  EDD, through Bank of America, provides claimants with a Visa debit card that is valid for three years from the date of issue.  EDD benefit payments for which claimants are eligible are deposited to the

debit card account.  Claimants have access to their funds 24 hours a day, seven days a week at any location where Visa debit cards are accepted and at ATMs.  The claimant's name appears on the debit card as the benefit payment recipient.  Once the card is received, the claimant activates the card by calling a phone number on a sticker placed on the card or by activating it online by providing their card number, expiration date, social security number and the three-digit security code on the card.  The debit card has no daily purchase or withdrawal limits, and the claimants have full access to their available balance at any time, although individual ATM may limit how much their ATMs will dispense in a single transaction.

E. <u>Fraudulent DI and UI Claims Are Filed Under Different Identities</u>

15.  EDD Investigator Ivant Romo reviewed approximately 19 DI claims filed online under approximately 19 different identities for an approximate actual loss of $210,156 and a potential loss of approximately $436,488.  Investigator Romo noticed the DI claims and the certifying physician/practitioner portion of the claims were all submitted online, and the claimant's occupation was often the same, among other commonalities.

16.  Investigator Romo reviewed approximately 72 UI claims filed online with the State of California under approximately 72 different identities.  The approximate actual loss associated with the 72 UI claims is $881,192.

17. Because this affidavit relies on bank records obtained in December, 2023, it necessarily does not cover more recent frauds in the same detail. But QUADRI appears to have continued the conspiracy through 2024.

F. QUADRI is on ATM Video Using at Least 38 other Persons' Accounts

18. On or about December 2023, Investigator Romo received surveillance footage from Bank of America, which showed the same individual making withdrawals at ATMs under different accounts for different persons. Investigator Romo compared DMV photographs of the claimants with that of the surveillance footage, and determined the person who appeared on ATM surveillance footage did not match any of the claimants' DMV photographs. Investigator Romo compared DMV photographs of QUADRI with that of surveillance footage and identified QUADRI as the individual making the withdrawals under at least 38 accounts, including those of identity theft victims Michelle Davey ("Davey"), Ronald Tung ("Tung"), and Douglas Cost ("Cost") as discussed later.

19. Investigator Romo told me he had reviewed social media photographs posted by QUADRI that sometimes show him wearing unusual or distinctive clothing, which he has also sometimes observed in the ATM surveillance photographs of the fraudulent withdrawals. Further, Investigator Romo has personally observed QUADRI on the street. He explained to me that considering his personal observations of QUADRI, and the many ATM surveillance

photographs he has reviewed, he is sure that QUADRI conducted many fraudulent withdrawals.

20. On or about December 19, 2022, Investigator Romo and I spoke with Dr. Lai regarding fraudulent DI claims that listed Dr. Lai as the certifying physician/practitioner. Investigator Romo showed Dr. Lai approximately four claims associated to QUADRI from 2020 and 2022 submitted to EDD which listed Dr. Lai as the certifying physician/practitioner. Dr. Lai stated he did not certify any of the four claims and did not authorize anyone to complete them on his behalf. Included in the four claims shown to Dr. Lai were two claims filed on Davey's behalf filed on 2021 and 2022 and a claim filed on Tung's behalf filed on 2021.

21. I reviewed the fraudulent DI claims filed on behalf of Davey and the DI claim filed on behalf of Tung. Based on my review of Davey's DI claims, there was an approximate total loss of $7,366 and a potential loss of $150,644. Based on my review of Tung's DI claim, there was an approximate total loss of $9,471 and a potential loss of $67,600.

22. On or about May 16, 2023, Investigator Romo and I spoke with Davey who stated she has never filed a DI claim with EDD. Davey confirmed her date of birth and SSN listed in the claim filed with EDD in 2021 and 2022.

23. I compared video surveillance images of ATM withdrawals related to Davey's DI claim and DMV photographs of QUADRI; and I am confident that QUADRI is the person captured on

ATM video conducting the following transactions using Davey's identity:

| Date | Location | Transaction Amount |
|---|---|---|
| 4/22/2021 | Los Angeles, CA | $1,000.00 |
| 4/26/2021 | Altadena, CA | $1,000.00 |

24. On May 16, 2023, Davey stated she did not give anyone permission to possess or use her SSN or to file any DI claim on her behalf.

25. On May 16, 2023, Investigator Romo and I spoke with Tung who stated he has never filed a DI claim with EDD. Tung confirmed his date of birth and SSN listed in the claim filed with EDD in 2021.

26. I compared video surveillance images of ATM withdrawals related to Tung's DI claim and DMV photographs of QUADRI; and I am confident that QUADRI is the person captured on ATM video conducting the following transactions using Tung's identity:

| Date | Location | Transaction Amount |
|---|---|---|
| 4/27/2021 | Los Angeles, CA | $1,000.00 |
| 4/29/2021 | Inglewood, CA | $1,000.00 |
| 5/01/2021 | Altadena, CA | $1,000.00 |

27. On May 16, 2023, Tung stated he did not give anyone permission to possess or use his SSN or to file any DI claim on

his behalf.

28. I reviewed the fraudulent UI claim filed on behalf of Cost. Based on my review of Cost's UI claim, there was an approximate total loss of $19,500.

29. On April 3, 2024, Investigator Romo and I spoke with Cost who stated he has never filed a UI claim with EDD. Cost confirmed his date of birth and SSN listed in the claim filed with EDD in 2020. Cost stated he has not lived nor worked in California since about 2005.

30. I compared video surveillance images of ATM withdrawals related to Cost's UI claim and DMV photographs of QUADRI; and I am confident that QUADRI is the person captured on ATM video conducting the following transactions using Cost's identity:

| Date | Location | Transaction Amount |
|---|---|---|
| 9/01/2020 | Pasadena, CA | $1,000.00 |
| 9/02/2020 | Pasadena, CA | $1,000.00 |
| 9/03/2020 | Pasadena, CA | $1,000.00 |
| 9/05/2020 | Pasadena, CA | $1,000.00 |
| 9/07/2020 | Pasadena, CA | $1,000.00 |
| 9/11/2020 | Pasadena, CA | $1,000.00 |
| 9/12/2020 | Pasadena, CA | $1,000.00 |
| 9/13/2020 | Pasadena, CA | $1,000.00 |
| 9/14/2020 | Pasadena, CA | $1,000.00 |
| 9/15/2020 | Pasadena, CA | $1,000.00 |

| 9/17/2020 | Pasadena, CA | $1,000.00 |

31. On April 3, 2024, Cost stated he did not give anyone permission to possess or use his SSN or to file any UI claim on his behalf.

G. QUADRI IS NOT A U.S. CITIZEN AND WILL BE DEPORTED IF CONVICTED

32. On or about July 8, 2024, Special Agent Daisy Garza reviewed QUADRI's immigration status and informed me that he is a permanent alien resident. AUSA Andrew Brown informed me that permanent aliens convicted of an "aggravated felony" under immigration law lose their status and are deported. 8 USC Section 1227(a)(2)(A)(iii). He also informed me that fraud offenses for which the loss exceeds $10,000 count as "aggravated felonies" under immigration law. 8 USC Section 1101(a)(43)(M).

H. QUADRI'S CO-CONSPIRATOR FLED AFTER HIS RESIDENCE WAS SEARCHED

33. On social media, QUADRI has posted several photographs of himself with his co-conspirator Roland Iwhiwhu Otega ("Otega"). On August 3, 2023, I executed a federal search warrant at Otega's residence investigating this scheme, which revealed evidence of identity theft. On August 8, 2023, according to flight records, Otega flew from Los Angeles International Airport to Doha, Qatar then to Lagos, Nigeria, and has not returned to the U.S. Otega and QUADRI appear to have shared at least one victim. In 2023, the address of a DI claim

filed on behalf Rosaly Ferrer ("Ferrer") was updated to Otega's Residence. QUADRI appears on video surveillance images of ATM withdrawals using Ferrer's identity.

I. QUADRI HAS BEEN WIRING FUNDS ABROAD

34. Bank records indicate that a JP Morgan Chase Bank account for which QUADRI is the signer has been wiring money abroad: from on or about November 13, 2023, to on or about July 11, 2024, the account was used to wire transactions totaling approximately $503,545 to include funds going to Prinx Chengshan Shandong Tire Co LTD (Agricultural Bank of China), Eping City Hengxin Trading Co LTD (Industrial and Commercial Bank of China), Prachi Exports (Yes Bank LTD) and Shouguang Firemax Tyre Co LTD (Jinan Rural Commercial Bank Co., LTD).

J. QUADRI HAS A ONE-WAY TICKET TO DUBAI

35. On September 19, 2024, HSI Special Agent Garza conducted a query of QUADRI's travel records through DHS databases. The query revealed QUADRI booked an outbound flight departing on September 21, 2024, from Atlanta, GA arriving on September 22, 2024, in Dubai, UAE. There is no record of a return flight found for QUADRI.

36. AUSA Andrew Brown informed me that there is no extradition treaty between the United States and the United Arab Emirates.

///

## IV. CONCLUSION

37.  For the reasons stated above, there is probable cause to believe that ABIOLA FEMI QUADRI violated 18 U.S.C. Section 1349 (conspiracy to commit bank and wire fraud), and 1028A (aggravated identity theft).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  19th  day of September, 2024.

_____
UNITED STATES MAGISTRATE JUDGE
A. Joel Richlin